WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| LifeSuccess Productions LLC, a Nevada limited-liability company,<br><br>Plaintiff,<br><br>v.<br><br>Paul Martinelli, husband; Kelly Dellasala, wife; Martinelli & Associates, Incorporated, a Florida domestic for profit corporation; Cheryl Fisher, wife; Bo Fisher, husband; and Dreams to Reality, Incorporated, a Florida domestic for profit corporation,<br><br>Defendants. | No. CV-13-01272-PHX-GMS<br><br>**ORDER** |

Pending before the Court are Defendants Paul Martinelli and Martinelli and Associate, Inc.'s Motion to Dismiss (Doc. 25) and Defendants Cheryl Fisher and Dreams to Reality, Inc.'s Motion to Dismiss the First Amended Complaint (Doc. 26). For the following reasons, Martinelli and Martinelli Inc.'s Motion is granted in part and denied in part and Defendants Fisher and Dreams to Reality, Inc.'s Motion is denied.[1]

## BACKGROUND

This case arises out of three contracts.

**I.    Martinelli Separation Agreement**

Defendant Martinelli worked with Plaintiff LifeSucess Productions LLC ("LSP") as an officer and manager of LSP-related subsidiaries and as a consultant. (Doc. 23

---

[1] Also pending are Defendants' Motions to Dismiss (Docs. 20–21) which regarded Plaintiff's initial Complaint (Doc. 1). As the Complaint was superseded by the First Amended Complaint (Doc. 23), the Court denies the initial Motions to Dismiss as moot.

("First Amended Complaint") ¶ 19.) In 2009, LSP decided to end its affiliation with Martinelli. On October 29, 2009, LSP and its subsidiaries presented Martinelli with a Separation Agreement (the "Martinelli Separation Agreement.") LSP and one of its subsidiaries agreed to pay Martinelli $410,000 as consideration. (*Id.* ¶ 22.)

Under this agreement, Martinelli was required to resign from his positions within LSP and agree to various restrictive covenants and other requirements. (*Id.* ¶ 21.) He agreed to return LSP property containing confidential, proprietary, and trade secret information as soon as practicable following execution of the agreement. (*Id.* ¶¶ 23, 26.) Further, the agreement barred Martinelli from soliciting any LSP customers or employees within two years of the agreement. (*Id.* ¶25.) LSP alleges that Martinelli entered into the agreement and accepted the funds pursuant to the agreement without intending to honor its obligations. (*Id.* ¶ 28.) Specifically, LSP alleges that Martinelli has failed to undertake reasonable efforts to return LSP property, and thus that he remains in possession of valuable LSP intellectual property and other materials. (*Id.* ¶ 29.) LSP further alleges that Martinelli is currently attempting or will soon attempt to profit from LSP materials for his own benefit and for the benefit of Martinelli and Associates, Inc. ("Martinelli, Inc."). (*Id.* ¶ 30.)

LSP asserts that Martinelli has thus materially breached the Martinelli Separation Agreement through these actions (*Id.* ¶ 32) and by employing Defendant Fisher, despite knowing she was an LSP agent at the time of the Martinelli Separation Agreement and therefore within the ambit of its non-solicitation provision. (*Id.* ¶ 33.) LSP further asserts that Martinelli has breached the agreement by participating in Fisher's accessing of LSP information through computers located at Martinelli, Inc.'s offices and by being somehow involved in Fisher's misappropriation of proprietary LSP information. (*Id.* ¶ 34.)

LSP alleges breach of contract and breach of the implied covenant of good faith and fair dealing against Martinelli and intentional interference with contract and conversion against both Martinelli and Martinelli, Inc. (*Id.* ¶¶ 58–93.) LSP brings some

of these claims against both Martinelli and Martinelli Inc. as LSP alleges that the two have such a unity of interest that Martinelli Inc. should be deemed the alter ego of Martinelli. (*Id.* ¶¶ 51–52.)

## II. The Fisher/Dreams, Inc. Independent Contractor and Separation Agreements

Defendant Fisher served as Vice President of Operations of Dreams to Reality, Inc. ("Dreams, Inc."), a Florida corporation. (*Id.* ¶¶ 9–10, 35.) At some point in 2011, Fisher, on behalf of Dreams, Inc., entered an Independent Contractor Agreement with LSP (the "Independent Contractor Agreement"). (*Id.* ¶ 35.) Under this agreement, Fisher agreed not to engage in any affiliation that would create a conflict of interest and not to use LSP confidential, proprietary, or trade secret information for any purpose outside of performing services for LSP. (*Id.* ¶ 36.) This information included the Infusionsoft Database, a database of LSP client information. (*Id.* ¶ 37.)

LSP alleges that Fisher and Dreams, Inc. have such a unity of interest that Dreams, Inc. should be deemed Fisher's alter ego. (*Id.* ¶ 39.) As such, LSP brings claims against Fisher, acting through Dreams, Inc. LSP alleges that Fisher and Dreams, Inc. breached the Independent Contractor Agreement by rendering services to Martinelli and/or Martinelli, Inc. that created an impermissible conflict of interest. (*Id.* ¶ 40.) Further, LSP alleges that Fisher, acting through Dreams, Inc., misappropriated LSP information for use in Martinelli's business. (*Id.* ¶ 41.) Finally, LSP alleges that Fisher failed to return all confidential, proprietary and trade secret protected information to LSP as required by the agreement. (*Id.* ¶ 42.)

As of January 15, 2013, LSP terminated its affiliation with Fisher and Dreams, Inc. through a Separation Agreement (the "Fisher/Dreams, Inc. Separation Agreement"). (*Id.* ¶ 43.) Under this agreement, Fisher and Dreams, Inc. represented that they had not improperly disclosed any LSP confidential, proprietary or trade secret materials. (*Id.* ¶ 44.) Fisher and Dreams, Inc. also represented that they had returned all LSP property to LSP and retained no copies of any LSP materials. (*Id.* ¶¶ 45–46.) LSP alleges that Fisher

and Dreams, Inc. breached the Fisher/Dreams, Inc. Separation Agreement by disclosing confidential LSP information to Martinelli, by failing to return all confidential, proprietary, or trade secret information to LSP, and by retaining copies of such information. (*Id. ¶¶* 47–50.)

LSP brings claims for breach of both the Independent Contractor Agreement and Fisher/Dreams, Inc. Separation Agreement and breach of the Implied Covenant of Good Faith and Fair Dealing under both contracts against Dreams, Inc. (*Id. ¶¶* 94–119.)

Finally, LSP brings claims of trade secret misappropriation, unjust enrichment, and for preliminary and permanent injunctive relief against all Defendants. (*Id. ¶¶* 120–43.) Defendants now move to dismiss all claims. (Docs. 25–26.)

**ANALYSIS**

**I.      Personal Jurisdiction**

   **A.      Legal Standard**

"The party seeking to invoke the court's jurisdiction bears the burden of establishing that jurisdiction exists." *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986) (citing *Data Disc, Inc. v. Systems Tech. Assocs.*, 557 F.2d 1280, 1285 (9th Cir. 1977)); *Cubbage v. Merchent*, 744 F.2d 665, 667 (9th Cir. 1984). "When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff is 'obligated to come forward with facts, by affidavit or otherwise, supporting personal jurisdiction.'" *Id.* (quoting *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977)). "The mere allegations of a complaint, when contradicted by affidavits, are not enough to confer personal jurisdiction over a nonresident defendant." *Chem Lab Products, Inc. v. Stepanek*, 554 F.2d 371, 372 (9th Cir. 1977) (citing *Taylor v. Portland Paramount Corp.*, 383 F.2d 634, 639 (9th Cir. 1967)); *Data Disc*, 557 F.2d at 1284 (citing *Taylor*, 383 F.2d at 639).

To establish a prima facie case for personal jurisdiction, the plaintiff has the burden of showing that: (1) the forum state's long-arm statute confers jurisdiction over the nonresident defendant; and (2) the exercise of jurisdiction comports with principles of

due process. *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 269 (9th Cir. 1995). Arizona's long-arm statute confers jurisdiction to the maximum extent allowed by the Due Process Clause of the United States Constitution. Ariz. R. Civ. P. 4.2(a); *Doe v. American Nat'l Red Cross*, 112 F.3d 1048, 1050 (9th Cir. 1997). Due process requires a nonresident defendant to have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal citation omitted). There are two types of personal jurisdiction, general and specific. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 n.5 (1985).

Specific jurisdiction is analyzed under a three-pronged test: "(1) [t]he non-resident defendant must *purposefully direct his activities* or consummate some transaction with the forum or resident thereof; *or* perform some act by which he *purposefully avails himself* of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable." *Mavrix Photo, Inc. v. Brand Tech., Inc.*, 647 F.3d 1218, 1227–28 (9th Cir. 2011).

### B. Defendants Fisher and Dreams, Inc.

Defendants Fisher and Dreams, Inc. move to dismiss all claims against them on the grounds that the Court lacks personal jurisdiction. (Doc. 26.) LSP contends that the Court may assert specific personal jurisdiction over Fisher and Dreams, Inc. under a purposeful direction analysis. (Doc. 29 at 4.) LSP alleges that Dreams, Inc. breached its contracts with LSP and breached the implied covenant of fair dealing in those contracts. Further, LSP alleges that both Fisher and Dreams, Inc. misappropriated LSP trade secrets. Thus, the claims against Fisher and Dreams, Inc. sound in both tort and contract.[2]

---

[2] Unlike the Martinelli Separation Agreement, neither the Fisher Separation Agreement nor the Independent Contractor Agreement contain forum-selection clauses selecting Arizona. Both agreements are governed by the laws of the State of Nevada. (Doc. 23 ¶ 108.)

Under the first of the three prongs of specific personal jurisdiction analysis, the Ninth Circuit typically uses a purposeful direction test for cases sounding in tort and a purposeful availment test for cases sounding in contract. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). Although these tests are distinct, the Ninth Circuit has also recognized that the first prong "may be satisfied by purposeful availment of the privilege of doing business in the forum; by purposeful direction of activities at the forum; or by some combination thereof." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006). Additionally, if a court has personal jurisdiction over a defendant with respect to one claim, it can also often exercise jurisdiction over other claims, so long as they arise out of a common nucleus of operative facts or form part of the same case or controversy. *Washington Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 673 (9th Cir. 2012) (discussing pendent personal jurisdiction and supplemental subject matter jurisdiction).

Here, where there are both contract and tort claims, either test can apply. The Court will analyze personal jurisdiction under a purposeful availment analysis. To do so, the Ninth Circuit uses the three-part "effects" test derived from the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783 (1984). *Id.* at 803. Under *Calder*, "purposeful availment is satisfied even by a defendant 'whose only 'contact' with the forum state is the 'purposeful direction' or a foreign act having effect in the forum state.'" *Id.* The "effects" test "requires that the defendant allegedly have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id.* (citations omitted).

Here, each of the three prongs is satisfied. First, Fisher and Dreams, Inc. are alleged to have committed the intentional act of misappropriating trade secrets. Next, in the Ninth Circuit, the requirement that the intentional act was expressly aimed at the forum state is "satisfied when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." *Bancroft & Masters, Inc. v. August Nat'l, Inc.*, 223 F.3d 1104, 1111 (9th Cir.

2002.) Here, the alleged trade secrets are the property of LSP, an entity with its principal place of business in Scottsdale, Arizona. Defendants do not dispute that they knew the location of LSP's principal place of business, and thus the second prong is satisfied.

Finally, the third prong of the *Calder* test is satisfied as defendants would have known that LSP would likely suffer harm in Arizona from the alleged misappropriation of trade secret information. Therefore, the Court finds that Fisher and Dreams, Inc. are alleged to have purposefully directed their conduct at Arizona. The claims now brought against them arise from this conduct, and the exercise of jurisdiction over these Defendants is reasonable. Therefore, the Court finds that it may exercise personal jurisdiction over Defendants Fisher and Dreams, Inc. and the Motion to Dismiss claims against these Defendants is denied. The Court need not reach the issue of whether personal jurisdiction is also available through the purposeful availment analysis used in contracts cases as both tort and contracts claims are present.

### C. Claims Against Martinelli, Inc.

LSP also brings both contract and tort claims against Martinelli, Inc. Defendant moves to dismiss on the grounds that the Court lacks personal jurisdiction over Martinelli, Inc. However, as above, Martinelli, Inc. is alleged to have intentionally misappropriated trade secrets owned by LSP, an entity it knew to have its principal place of business in Arizona. Further, under the third prong, Martinelli, Inc. can reasonably be said to have known that the harm from this misappropriation would be felt in Arizona. The claims against Martinelli, Inc. arise from this purposefully directed conduct, and the Court finds that it is reasonable to exercise personal jurisdiction over this defendant. As such, the Motion to Dismiss claims against Martinelli, Inc. is denied. The Court need not reach the question of whether personal jurisdiction would also be available under the purposeful availment analysis typically used in contract cases.

## II. Claims Against Martinelli

Martinelli moves to dismiss LSP's claims for damages against him on the grounds that those claims must be arbitrated under the terms of the Martinelli Separation

Agreement. In relevant part, the Martinelli Separation Agreement states that "[t]he parties agree that should any dispute arise between parties relating to this Agreement, the issue shall be submitted to arbitration . . . [n]otwithstanding the above, in the event either party wishes to obtain equitable relief …. enforcing this Agreement, it may bring a claim for such relief in arbitration or in an action in an applicable court in Phoenix, Arizona." (Doc. 6 at 40.) It is thus clear that Plaintiff must bring any damages claims against Martinelli to arbitration, but that it need not do so with any claims for injunctive relief. Plaintiff does not appear to contest this reading. (Doc. 28 at 5.)

The only claims against Martinelli under the Martinelli Separation Agreement not subject to this mandatory arbitration provision are any claims for equitable relief. Thus, the Motion to Dismiss Plaintiff's claims against Martinelli is granted to the extent the remedy sought for any of the causes of action against Martinelli is damages. The Motion is denied to the extent the remedy sought for any of these claims is equitable relief.

**IT IS THEREFORE ORDERED** that Defendants Cheryl Fisher and Dreams to Reality, Inc.'s Motion to Dismiss the First Amended Complaint (Doc. 26) is **denied**.

**IT IS FURTHER ORDERED** that Defendants Paul Martinelli and Martinelli and Associate, Inc.'s Motion to Dismiss (Doc. 25) is **granted in part and denied in part.**

**IT IS FURTHER ORDERED** that Defendants' Motions to Dismiss Plaintiff's initial Complaint (Doc. 20, Doc. 21) are **denied** as moot.

Dated this 10th day of December, 2013.

*A. Murray Snow*
G. Murray Snow
United States District Judge